OPINION OF THE COURT
Ira Gammerman, J.
Motions numbered 76 and 204 of the calendar of July 12, 1985 are consolidated for disposition.
Petitioner brings this special proceeding (calendar No. 204) for a judgment pursuant to Administrative Code of the City of New York § 435-4.0 (e) .(l) declaring that respondent is not a proper claimant entitled to certain property and money seized by the police and held by the Property Clerk. Respondent seeks dismissal of the petition (calendar No. 76) and has counterclaimed seeking various amounts in damages based upon alleged negligence regarding disposition of the property seized.
According to the petition the seized property consists of *359 money in the sum of $27,800; gambling records, a tape recorder and telephone equipment; five telephones; and computer equipment. This property was seized from the respondent on September 17, 1984 at his apartment, 4E, at 301 East 48th Street. At that time respondent was arrested for promoting gambling in the first degree (Penal Law § 225.10) and possession of gambling records in the first degree (Penal Law § 225.20). These charges were eventually dismissed, but, as petitioner contends dismissal of criminal charges is not determinative of the issues in this forfeiture proceeding (Property Clerk of N. Y. City Police Dept. v Hurlston, 104 AD2d 312). Petitioner states, again citing Hurlston, that "[i]n a forfeiture proceeding the burden is on the petitioner to prove, by a preponderance of the evidence, that the money in question is the proceeds of crime or derived from crime” (Property Clerk of N. Y. City Police Dept. v Hurlston, supra, at p 313). Furthermore, citing Matter of City of New York v Cosme (67 AD2d 852), petitioner claims that in this special proceeding, the court may make a summary determination.
In support of its burden, the petitioner submits an affidavit from the arresting officer which recites that the search of respondent’s apartment, pursuant to a search warrant, resulted in the discovery of "a 'wireroom’ operation being conducted by the respondent” and seizure of "43 slips representing 75 wagers in excess of $5,000 wagered, telephone and computer equipment, and $27,800 in U.S. currency.” The arresting officer’s affidavit also states that the discovery of the "wireroom” operation "confirmed information received in a court-authorized wiretap”. It is claimed that "telephone conversations recorded on September 3, 1984 and September 9, 1984 dealt exclusively with bets on sporting events”. The court is left to surmise, however, whether these conversations involved the placing of bets or the receiving of bets. Similarly the information contained on the 43 seized slips is not divulged. Thus, the court cannot evaluate the significance of these slips. If these slips contained notations which showed that opposing sides in a sporting event had been bet, then the inference would be that the slips were the records of a "bookmaker”. If the notations showed betting on only one side of a sporting event, the inference then would be either the slips represented personal bets or were the records of a foolhardy "bookmaker”. Similar analysis might also be made on the undisclosed information contained on the recording equipment or in the computer. The failure to detail the exact *360 nature of the telephone conversations or the information contained on the 43 seized slips, the recording or the computer permits a prima facie inference that nothing inculpatory was obtained.
Respondent, a member of the New York State Bar since 1968, denies ever having accepted illegal wagers on sporting events. He does, however, admit to being "an avid sports handicapper” and to placing bets on football and basketball games. He claims that the seized betting slips were records of his own bets. He also alleges that he is a partner in "a sports service known as 'The Sports Caster’ ” and claims he uses the computer, telephone and tape recording equipment either in connection with his "sports service” or in connection with his personal betting activity. Respondent claims the $27,800 which was seized was derived from his activity as a bettor, not a bookmaker. Moreover, he claims it was taken from "a closed storage closet” well away from all the other alleged gambling evidence (see, Property Clerk of N. Y. City Police Dept. v Di Paolo, 78 AD2d 834; In re City of New York [Steigerwald], NYLJ, Oct. 6, 1978, p 4, col 4, for the significance of this claim). In addition, he raises questions regarding the admission of evidence allegedly illegally obtained in violation of US Constitution 4th Amendment. At a minimum factual issues have been raised which would preclude a summary resolution of this matter (see, Matter of City of New York v Cosme, supra; Property Clerk of N. Y. Police Dept. v Di Paolo, supra; Yedvobnick v Grupposo, 73 Misc 2d 687). However, respondent also contends that this forfeiture proceeding was not timely commenced.
Before addressing respondent’s dismissal motion (calendar No. 76 — incorrectly labeled "notice of petition”), petitioner’s claim with regard to that motion must be addressed. Petitioner contends the dismissal motion is defective because of respondent’s failure to make timely service pursuant to CPLR 2214 (b). That rule requires service of motion papers "at least eight days” before the return date. Since the return date was July 12 and service of respondent’s papers was made on July 5, petitioner claims respondent’s dismissal motion is fatally defective.
The present action is a special proceeding governed by CPLR article 4. CPLR 403 (b) contains the timetable for service of papers in special proceedings. That timetable provides an answer to a petition shall be served at least one day before the time at which the petition is noticed to be heard. *361 CPLR 404 (a) allows the respondent in a special proceeding to object in point of law by motion within the time to answer. Respondent’s motion to dismiss the petition is, thus, clearly timely. Was the petition?
The Property Clerk is required to return seized property (other than contraband) upon timely demand of the person from whom the property was seized unless "within ten days of such demand [the Property Clerk] initiates a lawful forfeiture or other similar proceeding which seeks to justify the State’s continued detention of the property” (McClendon v Rosetti, 369 F Supp 1391, 1394, on remand from 460 F2d 111 [2d Cir 1972]). This forfeiture proceeding is timely, pursuant to Mc-Clendon, only if it was commenced within 10 days of the demand.
Respondent contends the petition was not initiated within 10 days of his demand on April 8, 1985. Petitioner claims the demand was not made until April 9, 1985. Moreover, petitioner contends the McClendon "ten days” has been interpreted by Judge Lasker, who wrote the McClendon decision (supra), to mean "that such proceedings should be instituted within ten working days” (see, May 27, 1983 letter to counsel involved in McClendon). Petitioner further claims that a notice of petition was filed on April 22, 1985 with the County Clerk of New York County "to toll the Statute of Limitations”.
The filing of a summons (or in the instant case a notice of petition, the equivalent pleading in a special proceeding) with a County Clerk within the City of New York pursuant to CPLR 203 (b) does not "toll the Statute of Limitations”. CPLR 203 (b) does not operate as a tolling provision; it merely provides various alternative means of commencing actions (Maurer v County of Putnam, 89 Misc 2d 302). CPLR 203 (b) (5) (i) states that
"A claim * * * is interposed * * * when * * *
"[t]he summons [notice of petition] * * * is filed with the clerk * * * provided that:
"(i) the summons [notice of petition] is served upon the defendant [respondent] within sixty days after the period of limitation would have expired but for this provision”. Assuming, arguendo, that "ten working days” is the controlling time period, the filing of the notice of petition with the County Clerk on April 22, 1985 would make this proceeding timely regardless of whether the demand was made on April 8 *362 or April 9 provided the notice of petition was served "within sixty days after the period of limitation would have expired”.* In addition to disputing the fact that the notice of petition was filed with the County Clerk, respondent claims that the notice of petition was not served "within sixty days after the period of limitation would have expired.” Although it appears that the notices were filed with the County Clerk, there is merit to the claim of late service.
Once more assuming, arguendo, "ten working days” is the controlling time period, if the demand was made on April 8, 1985 (respondent’s contention) the time period within which to bring the forfeiture proceeding expired on April 22, 1985. If the demand was made on April 9, 1985 (petitioner’s contention) then the time period expired on April 23, 1985. Sixty days from these dates is June 21 and June 22, 1985, respectively. Was the notice of petition properly served on or before either of these dates?
Petitioner contends service of the notice of petition was initially made by mail on June 20, 1985. The affidavit of service annexed to the notice of petition indicates mailing to the respondent at "301 E. 48 St., Apt. 4E”. Petitioner also contends that the respondent’s arresting officer attempted personal service on June 21, 1985 but that "the premises [while not identified, presumably 301 East 48th Street, apartment 4E] appeared to be abandoned”. Therefore, petitioner maintains that it was impossible to complete service pursuant to CPLR 308 since respondent’s actual place of business, dwelling place or usual place of abode was unknown. It is alleged that respondent’s attorney, who was subsequently contacted regarding the inability to serve respondent, informed petitioner that respondent would come to petitioner’s business office for personal service. Based upon the admission of service on the notice of petition and petition it is apparent that respondent was personally served on June 25, 1985.
Regardless of whether the demand for the seized property was made on April 8 or April 9, 1985, service on June 25, 1985 is not within 60 days after the period of limitation would have expired. Incredibly petitioner attempts to defend the patently late service by claiming that "the 60-day statute of limitations *363 was extended indefinitely after June 21, 1985 until such time as respondent’s whereabouts were made known to petitioner”. This was because "respondent either intentionally evaded service during the 60-day extension period or inadvertently failed to inform petitioner of his whereabouts during this period, and inasmuch as the address given to petitioner by respondent’s attorney at the time that the demand was made false and inaccurate”.
No evidence is proffered to substantiate any claim of intentional evasion of service. Nor is any statutory or case law cited which imposes an affirmative duty upon a claimant of seized property to inform the Property Clerk of the claimant’s whereabouts during CPLR 203’s 60-day extension period. Likewise, no evidence is presented to show that the address (allegedly given to petitioner by respondent’s attorney at the time that the demand was made) was false and inaccurate. In fact, that address is not even set forth by petitioner. Contrary to petitioner’s claims, respondent presents a copy of an April 3, 1985 letter which authorized his then attorney to act for him with regard to the seized property. There is no disclaimer by petitioner that this letter, containing respondent’s present address and telephone number, was not presented to petitioner when the demand for the property was made. Moreover, petitioner’s claimed inability to serve respondent for want of his present address is attributable to petitioner’s failure to utilize the procedures set up in McClendon (supra). The order in McClendon, purportedly signed by Judge Lasker on July 15, 1974, states, at paragraph 4, that "If a demand is made either by the claimant personally, or by such representative (authorized in writing to claim the property or money on behalf of the claimant), the Property Clerk may require him to identify himself and state his present address.” Respondent was not served "within sixty days after the period of limitation would have expired” and, therefore, this forfeiture proceeding must be dismissed.
Petitioner’s failure to release respondent’s property or to timely institute forfeiture proceedings is but another example of what was termed "governmental arbitrariness” in Mc-Clendon (see, 460 F2d 111, 115, supra). The reluctance of the Property Clerk to release seized property, and, possibly the very seizure of that property, is perhaps tainted by the fact that unclaimed seized property is paid into the police pension fund (see, Administrative Code § 435-4.0 [e]). The fact that the police can seize property, which is then given into the custody *364 of the Property Clerk, and which, if unclaimed, inures to the benefit of the police by being placed in the police pension fund, suggests at least the appearance of impropriety. The McClendon court retained jurisdiction of that action because of, inter alia, this very issue but it is unknown whether any action was taken in this regard. Regardless, the ultimate disposition of unclaimed seized property seems ripe for change and some modification of the Administrative Code in this regard seems in order.
While the forfeiture proceeding must be dismissed for lack of service within the prescribed time period, respondent has timely interposed a counterclaim against the petitioner. With respect to that counterclaim, it is severed and the petitioner is directed to serve a reply to the counterclaim within five days of entry of the judgment to be entered herein. The counterclaims against parties other than the petitioner are dismissed because of lack of service.
Accordingly, the forfeiture proceeding is dismissed and petitioner is directed to return the seized property to respondent forthwith.

 This court is troubled over the use of CPLR 203 (b) in conjunction with forfeiture proceedings but does not pass on its use since it is not necessary for a determination in this proceeding. However, since Judge Lasker has interpreted the McClendon time period as "ten working days” perhaps his guidance should also be sought in this regard.